UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELENA ORTIZ on Behalf of Herself and on
On Behalf of All Others Similarly Situated,

        Plaintiff,

v.　　　　　　　　　　　　　　　　Case No: 6:19-cv-01644-Orl-37- RBD- LRH

PIN UPS OF DAYTONA
BEACH, LLC, JOSEPH
LOGUIDICE and TIMOTHY
BLAKESLEE,

        Defendants.
_____/

**SECOND RENEWED JOINT MOTION FOR JUDICIAL APPROVAL OF
SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE**

COME NOW, Named Plaintiff ELENA ORTIZ, Opt-in Plaintiffs, ASHLEY MARQUEZ and SHAQUELLA WESTON and Defendants PIN UPS OF DAYTONA BEACH, LLC, JOSEPH LOGUIDICE and TIMOTHY BLAKESLEE (collectively the "Parties"), by and through their undersigned counsel, respectfully request that the Court approve the attached Settlement Agreement and Release ("Agreement" attached as Exhibit "1") resolving the above-captioned action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). For the reasons stated below, the Parties respectfully request that the Court find that the Agreement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and dismiss with prejudice Plaintiff's FLSA wage claims, with prejudice.

## I. BACKGROUND

1. On August 23, 2019, Plaintiff Ortiz filed her lawsuit against Defendants, seeking, on behalf of herself and others similarly situated, unpaid minimum wage compensation, statutory liquidated damages, and attorney's fees and costs.

2. The substance of Plaintiff's Complaint was that Defendants misclassified Plaintiff and other similarly situated exotic dancer employees at Defendants' Pin Ups of Daytona Beach adult entertainment club as independent contractors and, in doing so, failed to pay Plaintiff and other dancers minimum wage compensation at an hourly rate at least equal to the Federal and Florida Minimum Wage.

3. Defendants filed their answer and affirmative defenses on September 15, 2019. (Doc. No. 12). Plaintiff filed a Motion to Dismiss Defendants' Counterclaims on September 30, 2019. (Doc. No. 19). Briefing Plaintiff's Motion to Dismiss closed on October 24, 2019, and it was ultimately granted by the Court on June 29, 2020 without prejudice. (*See* Doc. Nos. 30, 53). While Defendants' counterclaims were dismissed, their affirmative defenses remained for adjudication.

4. Meanwhile, the case management and scheduling order was entered in this case on January 16, 2020. (Doc. No. 51).

5. Thereafter, Parties exchanged comprehensive written discovery and disclosures. Plaintiffs took the deposition of Timothy Blakeslee in his individual capacity and as the representative of the Defendant corporation.

6. Opt-in Plaintiffs, Shaquella Weston and Ashley Marquez joined this lawsuit as Opt-in Plaintiffs. Their consents were filed with the Court on November 18, 2019 (Doc. No. 37) and December 11, 2019 (Doc. No. 47) respectively.

7. The Parties attended a virtual mediation per the Court's order on July 8, 2020, but they were unable to reach a settlement agreement. (Doc. No. 58).

8. Ultimately a discovery dispute arose over the production of Plaintiffs' tax returns that the Parties. This dispute was discussed among counsel and litigated between June 29, 2020 to August 14, 2020 and remains unresolved as of the date of the Parties' settlement. (*See* Doc. Nos. 54, 57, 62 (Order by Magistrate granting Defendants' Motion to Compel), and 67 (Objection to the Magistrate's Order filed by Plaintiff).

9. Plaintiff filed a Motion to Certify a Class as a Collective under the FLSA on July 21, 2020. (Doc. No. 60). Defendants filed their Response in Opposition on August 4, 2020. (Doc. No. 64). With the Court granting Plaintiff's request to file a Reply on August 13, 2020 (Doc. No. 66), Plaintiff filed her Reply closing briefing on the matter on August 20, 2020. (Doc. No. 68). A hearing on the motion for conditional certification was set for October 7, 2020 before Judge Dalton. (Doc. No. 70). That hearing was cancelled following the Parties' notice that they had resolved this case. (Doc. No. 73).

10. Defendants had opposed the Motion to Certify a Class as a Collective on a variety of legal and factual grounds. In particular, Defendants had vigorously alleged that Plaintiff had misrepresented their claims and had perpetrated an alleged fraud on the Court.

11. Since before the Parties concluded discovery on August 3, 2020, they continuously kept open a line of communication regarding the possibility of settlement. At some points in the course of the case the Defendants proposed settlement while other times it was Plaintiffs who re-visited the possibility of reaching an early resolution to the case. After the close of discovery, the Parties were able to fully evaluate the risks of continuing the lawsuit and amount of uncertainty that would entail versus the benefits of settling the

matter now. There were two heavily litigated and still unresolved matters pending before the Court, a mediation already attempted, the vigorous assertion of affirmative defenses and more work still ahead.

12. The Parties, through counsel, engaged in a good faith and arms-length settlement dialogue after the close of discovery. Ultimately, after substantial negotiation (and considering the fact that the Pin Ups of Daytona Beach establishment closed due to the economic impact of the COVID-19 pandemic), the Parties agreed to a total settlement sum of $13,500.00 to be disbursed as follows: $5,442.12 to be divided among the three Plaintiffs; $4,053.44 payable to Plaintiff's attorneys for costs incurred, and $4,004.44 payable to Plaintiff's attorneys for fees.

13. Following the agreement in terms to the Settlement, the Parties cooperatively drafted and thereafter executed the attached Agreement (Exhibit "1").

## II. MEMORANDUM OF LAW

### A. Standard of Review

14. Pursuant to the case law of this Circuit, judicial review and approval of an FLSA settlement involving a compromise provides final and binding effect. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). The Eleventh Circuit has approved of two ways to resolve a wage claim:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under

> section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946); *Jarrard v. Southeastern Shipbuilding Corporation*, 163 F.2d 960, 961 (5th Cir. 1947).

*Id*. at 1352-53.

15. Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

16. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

   (1) the existence of fraud or collusion behind the settlement;

   (2) the complexity, expense, and likely duration of the litigation;

   (3) the stage of the proceedings and the amount of discovery completed;

   (4) the probability of plaintiff's success on the merits;

   (5) the range of possible recovery; and

   (6) the opinions of the counsel.

*See Christian v. Kleen Sweep, Inc.*, 2015 WL 13791850 at *1 (M.D. Fla. 2015).

17. The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Id*. at * 1-3.

**B. There is a bona fide dispute as to Plaintiffs' claims, and all of the relevant criteria support final approval of the Settlement Agreement.**

    *i.    Internal Factors.*

18. In *Dees v. Hydradry, Inc.*, the Court first analyzed "internal factors" to determine if a compromise of an FLSA claim was fair to the employee and required the parties seeking approval of the compromise to describe the nature of the dispute including the employer's reasons for disputing the employee's right to compensation and the employee's reasons for believing the disputed wages were due. 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

19. In this case, the Plaintiffs claimed that they were misclassified as independent contractors rather than employees while engaged as adult entertainers at Pin Ups of Daytona Beach. As such, they allege, Defendants failed to compensate Plaintiffs for minimum wages. Plaintiffs allege that they are owed unpaid minimum wage compensation under the FLSA. *See Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1353 (M.D. Fla. 1997); *Shaw v. Set Enterprises*, 241 F. Supp. 3d 1318, 1323 (S.D. Fla. 2017).

20. The Complaint further alleged that the Defendants required Plaintiffs to pay a "house" fee and tip out with Defendants' managers and employees who do not customarily receive tips. Doc. No. 1 ¶¶ 1-5.

21. In defense of this lawsuit, it was Defendants' position that the adult entertainers at Pin Ups of Daytona Beach were properly classified as independent contractors and therefore are not subject to the FLSA minimum wage provisions.

Defendants vigorously contended that they purposefully operated the club in a manner to ensure that the entertainers were properly treated as independent contractors.

22. Plaintiffs assert that such an arrangement and/or Plaintiffs' subjective intent to be an independent contractor is not relevant or dispositive to Plaintiffs' actual classification as contractor or employee. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947); *Secretary of Labor, United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1544-45 (7th Cir. 1987) (The FLSA is designed to defeat rather than implement contractual arrangements); *Brennan v. Partida*, 492 F2d 707, 709 (5th Cir. 1974) (holding that it does not "matter that the parties had no intention of creating an employment relationship, for application of the FLSA does not turn on subjective intent"); *Baker v. Flint Eng'g & Constr. Co.*, 137 F. 3d 1436, 1440 (10th Cir. 1998) (finding that rig welders were employees of general contractor even though parties signed an agreement stating an intent to maintain an independent relationship).

23. Plaintiffs allege that notwithstanding any agreement that may have been signed or entered into between the Parties, status as employee or contractor is determined by an analysis of certain defined economic reality factors. The factors regularly and customarily analyzed are the following:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013).

24. Plaintiffs allege that their ongoing extended at-will relationship with Defendants, the substantial case law within the Eleventh Circuit and across jurisdictions affirming and re-affirming exotic dancers as employees under the FLSA and Florida law, and consideration of all other economic factors confirms Plaintiffs' and the Defendants' employee/employer relationship.

25. Defendants, however, distinguish this matter from other cases where exotic dancers sued for unpaid wages. Defendants argue that those in Plaintiffs' alleged position were wholly free to operate independently of the club and were subject to no control or demands indicative of an employee/employer relationship. To this end, Defendants deny (i) they misclassified Plaintiffs as an independent contractors; (ii) that an analysis of the true economic realities of Plaintiffs' work relationship with Defendants had any indicia of an employee/employer relationship; and (iii) that even if Plaintiffs are adjudged to have been "employees" at any time during their relationship with Defendants, the money Plaintiffs received in exchange from performing exotic dances at Defendants' gentlemen's club exceeded the amount Plaintiffs would have received had Defendants paid them direct wages at the Federal or Florida Minimum Wage rate.

26. Defendants further assert that their dancer logs and records show that Plaintiffs either never performed at the Pin Ups club or did so on only a few occasions.

27. Plaintiffs do not have records of each shift they worked. However, Defendants claim to have comprehensive, complete and reliable records of the shifts Plaintiffs worked.

28. The following relevant facts were in dispute:

29. **Number of Hours Claimed**: Plaintiff Ortiz allegedly worked at Pin Ups of Daytona Beach's from July 2017 until March 2018. She generally worked 4 to 5 shifts per week and about 7 hours per shift.

30. Plaintiff Weston allegedly worked at Pin Ups of Daytona Beach's from January 2018 to March 2019. She generally worked 3 to 4 shifts per week and about 7 hours per shift.

31. Plaintiff Marquez allegedly worked at Pin Ups of Daytona Beach's from July 2017 until March 2018. She generally worked 4 to 5 shifts per week and about 7 hours per shift.

32. Defendants fervently disagreed with the number of hours claimed by the Plaintiff entertainers. There was evidence that the number of hours claimed by all of the Plaintiffs were inaccurate.

33. **Rules for the Entertainers**: The corporate representative and individual Defendant, Tim Blakeslee, testified that the Club does not enforce any rules for entertainers other than they must comply with the laws and local ordinances governing adult entertainment. However, the Plaintiff entertainers claim the Defendants imposed requirements with regards to lengths of dances on the stage and minimum number of shifts per week, among others.

34. **Fines**: The corporate representative and individual Defendant, Tim Blakeslee, testified that the club did not have any fines it would impose on the entertainers. However, the Plaintiffs claim fines were imposed, for example if dancers wanted to leave before a shift concluded or if they missed their call to perform on the main stage.

35. **Tip Sharing**: This issue was disputed between the Parties. There was testimony that the entertainers would tip out the managers and other employees who do not customarily receive tips. There was testimony that this was voluntary and other testimony that this was required. Defendants asserted that any tip sharing was purely voluntary.

36. In view of the above disputes, the Parties compromised the settlement of their FLSA claims. Pursuant to the Settlement Agreement, Plaintiffs are being paid a fair amount for the alleged minimum wage violations as well as the alleged illegal confiscation of earnings through fines, fees and tip sharing.

   ii. *External Factors*.

37. In evaluating a compromise, the Court should consider an array of "external" or contextual factors pertinent to the statutory purpose of the FLSA. *Dees*, 706 F. Supp. 2d at 1243–44. "Compromise of a retrospective dispute may be permissible if, for example, . . . some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution." *Id*. at 1244.

38. Here, there are a number of external factors that were considered by the Parties. The Parties considered, for example, (1) the Parties' stark differences in factual and legal positions, (2) the risks, delays, and costs on both sides associated with continued litigation, and (3) Defendants' current and future financial position to satisfy a larger settlement or judgment (*i.e.* because the business is permanently closed as a result of

declining revenues and the COVID-19 pandemic); (4) evidence suggesting that Defendant Joseph Loguidice was not active in the management of the business and could not be held individually liable for the corporation's FLSA obligations, if any. The Parties also considered that extensive discovery was undertaken, a mediation and the discovery period is now closed when they decided to settle the case. Despite the risks and uncertainty, the Parties agreed to allocate half of each Plaintiff's settlement amount to owed wages and confiscated earnings and the other half to cover liquidated damages.

39. Further, in this case, the probability of success on the merits, as well as the complexity, expense, and length of future litigation, also support approving the Parties' settlement. Plaintiffs and Defendants continue to disagree over the merits of the claims asserted by Plaintiffs. Most strikingly, the Parties cannot even agree that two of the three Plaintiffs worked for Defendants at all. If the Parties continued to litigate this matter, they would be forced to engage in costly litigation in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

40. As part of the settlement negotiations, the Parties engaged in discovery including the deposition of Defendant Timothy Blakeslee and a full exchange of all documents pertaining to Plaintiffs' performances at Pin Ups of Daytona Beach's and the club's policies and procedures regarding compensation of exotic dance entertainers. To this end, there has been enough investigation and exchange of information to allow counsel to reach a fair and reasonable resolution of this matter. In agreeing upon the proposed settlement, the Parties were able to conduct an informed analysis of the claims and counterclaims.

41. In reaching the settlement, the Parties considered Plaintiffs' probability of success on the merits and the amounts they would be awarded if this case were to proceed to trial. Defendants claim to only have records showing one of the three Plaintiffs worked at Pin Ups of Daytona Beach. Specifically Defendants claim Plaintiff Ortiz and Opt-In Plaintiff Marquez never worked at Pin Ups of Daytona Beach. (*See* Doc. No. 64, Defendants' Response in Opposition to Motion for Conditional Certification, at 1). The Defendants did not recover one scrap of paper that shows these two Plaintiffs ever stepped foot into the club while Defendants operated it. (*Id.*). The Defendants' position on Plaintiff Weston is that she only worked at the club a total of "nine days." (*See Id.*). The Defendants have accused all three Plaintiffs of committing an alleged "fraud on the Court." (*See Id.*). Plaintiffs have not been able to push back against the amount of time if any the Defendants claim they worked at the club. Plaintiffs lack the documentary evidence needed to prove the time they claim to have worked at Pin Ups of Daytona. However, they vehemently deny that they have committed any such fraud on the court and have always tried to be as candid as possible with the Court. Therefore, they have agreed to settle the case based on the risks involved with trying their case on the evidence in hand. Discovery in this case closed on August 3, 2020. Nevertheless, based on the Plaintiffs' reasonable and reduced estimations, the balance of unpaid minimum wage compensation owed is calculated as follows for each Plaintiff:

| Plaintiff | Dates of Work | Estimated Total Weeks Worked | Average Shifts per Week | Average Hours per Week | Minimum Wages Owed |
|---|---|---|---|---|---|
| Elena Ortiz | July 2017 to March 2018 | 36 | 4 | 7 | $8,202.60 |

| Shaquella Weston | January 2018 to March 2019 | 47 | 3 | 7 | $8,200.08 |
| Ashley Marquez | July 2017 to March 2018 | 37 | 4 | 7 | $8,433.60 |

42. The Settlement in this case of $13,500, with Plaintiffs receiving $5,442.12, given the uncertainties of the case, represents a fair and reasonable settlement of Plaintiffs' claims for owed wages, liquidated damages and reimbursement of fees, fines and tips shared. Plaintiff's counsel will divide the portion of the settlement going to the Plaintiffs proportionally based on their claimed owed wages. Half of each Plaintiff's settlement amount will be allotted to cover liquidated damages. *See* Exhibit "1" at 2. Plaintiffs agree this is the fairest way to divide the recovery since all three participated in the case equally since each were served with and responded to written discovery and each attended the mediation. Defendants did not depose any of the Plaintiffs.

**C. The attorneys' fees sought are fair and reasonable.**

43. Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

44. Parties may demonstrate the reasonableness of the attorney fees by either: 1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). The Parties agree to the reasonableness of the attorney fees and costs pursuant to the *Bonetti* standard by agreeing

to an amount of attorney fees without regard to the amount paid to settle Plaintiffs' FLSA claims.

45. In this case, Plaintiff's counsel bill at rates ranging from $325 to $450 per hour. Plaintiff's counsel's staff including paralegals and law clerks bill at rates ranging from $70 to 125 per hour. Collectively, counsel and staff (lead and local) have billed over 405 hours in the case which totals approximately $111,739.99. Plaintiff's counsel have recoverable litigation costs in the amount of $4,053.44.

46. Although the settlement fee and cost payment by Defendants calculates to an amount less than Plaintiff's counsel's lodestar, in the interest of a settlement, Plaintiff's counsel accepted the lesser sum.

47. In an arm's length negotiation, separate and apart from the settlement of Plaintiff's underlying claims, Plaintiff's counsel agreed to accept payment by Defendants of attorney's fees and costs in the combined total amount of $8,057.88.

48. Plaintiff's counsel's agreement to accept $4,004.44 as a reduced fee and $4,053.44 as a reduced cost recovery is reasonable and in line with the work performed and the recovery received in this case.

**D. The settlement should be approved by the Court.**

49. In determining whether the settlement is fair and reasonable, the Court may consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

50. In considering these factors, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton v. Frito-Lay, Inc*., 2007 U.S. Dist. LEXIS 10287 at *4 (M.D. Fla. Jan. 8, 2007) (citing *Cotton v. Hinton* 559 F.2d 1326, 1331 (5th Cir. 1977)).

51. The terms of the settlement have been approved by Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel.  The settlement was negotiated at arms' length.  The Parties entered into the Settlement Agreement voluntarily and knowingly.  The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

52. There has been no fraud or collusion with respect to the Parties' settlement. Courts have found no fraud or collusion where all parties to the settlement were represented by counsel and the amount to be paid to the plaintiff(s) seemed fair:

> The parties state that each of them were independently represented by counsel who have "extensive experience in litigating claims under the FLSA." Doc. 37 at 5. The parties acknowledge that counsel are obligated to vigorously represent their clients and assert that counsel did so here. *Id*; *See Helms v. Cent. Florida Reg'l Hosp.*, No. 605–CV383–ORL–22JGG, 2006 WL 3858491, at *4 (M.D. Fla. Dec. 26, 2006) (taking into account the parties' representation by counsel in evaluating fairness of an FLSA settlement and finding no suggestion of collusion where the parties stipulated that the settlement was fair and reasonable).

*Robinson v. Anytime Rentals, Inc.*, 2016 WL 1728745 at *2 (M.D. Fla. 2016). In this matter, each party was independently represented by counsel with experience in litigating claims under the FLSA. Counsel for both parties were obligated to and did vigorously represent their clients' rights. Further, the Parties' counsel represents to the Court that there was no fraud or collusion on their part.

53. Next, as previously discussed, the discovery period has closed, extensive discovery was undertaken, and the case was on the cusp of possibly being conditionally certified as a collective action which could have increased Defendants' financial exposure drastically. Based upon the stage of proceedings and pending motions, the Parties decided to settle the case to eliminate the risk of prolonged litigation.

54. Additionally, the factual and legal disputes were recited above and illustrate the uncertainty of success by either party on the merits of the case. Based on the limited record of evidence, the range of possible recovery was in serious question. At trial, Plaintiffs would have had to rely on a few photographs and witness testimony to establish the dates of employment claimed in stark contrast to the mountain of documentation produced by Defendants that did not mirror those claims.

55. Lastly, counsel for the Parties have litigated FLSA cases and are familiar with the complex issues and risks associated with pursuing such cases. Based on their learned opinions, this Settlement Agreement is in the best interests of all the Parties.

56. Therefore, the Parties respectfully request the Court find the Settlement Agreement fair and reasonable based on the foregoing. Defendants, by and through its counsel, do not oppose this motion.

### IV.    CONCLUSION

The Parties, through counsel, have worked cooperatively to resolve this FLSA matter in a manner that adequately considers the strengths of Plaintiff's claims, the merits of Defendants' potential defenses and counterclaims, and the risk and uncertainty of litigation. Accordingly, the Parties respectfully ask this Court to grant this Motion for Approval of the Settlement and enter an Order dismissing this matter, with prejudice.

Respectfully Submitted,

| | |
|---|---|
| /s/ Tina E. Gutierrez | /s/_Gary S. Edinger_____ |
| David W. Hodges (admitted pro hac vice) | GARY S. EDINGER, Esquire |
| dhodges@hftrialfirm.com | Florida Bar No.: 0606812 |
| Texas Bar No. 00796765 | 305 N.E. 1st Street |
| Tina E. Gutierrez (admitted pro hac vice) | Gainesville, Florida 32601 |
| Texas Bar No. 24116467 | (352) 338-4440/ 337-0696 (Fax) |
| 4409 Montrose Blvd., Suite 200 | GSEdinger12@gmail.com |
| Houston, Texas 77006 | |
| Telephone: (713) 523-0001 | |
| Facsimile: (713) 523-1116 | |
| | |
| ATTORNEYS IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS AND LOCAL COUNSEL: | ATTORNEY FOR DEFENDANTS |

SCOTT WAGNER & ASSOCIATES, P.A.
Cathleen Scott, Esq.
Florida Bar Number 135331
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant conferred with counsel for Defendants regarding the relief requested in this motion who advised that he has no objection.

Dated: November 19, 2020

/s/ Tina E. Gutierrez
Tina E. Gutierrez

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been forwarded to GARY S. EDINGER, Esquire [GSEdinger12@gmail.com] 305 N.E. 1st Street Gainesville, Florida 32601, via the CM/ECF System on November 19, 2020.

          /s/  Tina E. Gutierrez
          Tina E. Gutierrez