# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ELENA ORTIZ,**

       **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**Case No:　6:19-cv-1644-Orl-37LRH**

**PIN UPS OF DAYTONA BEACH, LLC,**
**JOSEPH LOGUIDICE and TIMOTHY**
**BLAKESLEE,**

       **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**　**SECOND RENEWED JOINT MOTION FOR JUDICIAL APPROVAL OF SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE (Doc. No. 80)**
>
> **FILED:**　November 19, 2020
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. BACKGROUND.

On August 23, 2019, Plaintiff Elena Ortiz, an exotic dancer, filed this putative collective action against her former employers Defendants Pin Ups of Daytona Beach, LLC, Joseph Loguidice, and Timothy Blakeslee (collectively, "Defendants"). Doc. No. 1. Plaintiff Ortiz alleges that Defendants misclassified her and other similarly situated employees as independent contractors and, in doing so, did not pay them the applicable minimum wage. *Id*. ¶¶ 1, 3–4. Instead, Plaintiff Ortiz

alleges that the putative class members' primary source of income came from customer tips, which the Defendants allegedly took as "house fees" or "rent" and/or divided among other employees who did not receive tips. *Id.* ¶¶ 2–4. Based on these allegations, Plaintiff Ortiz, on behalf of herself and other similarly situated individuals, asserts claims for unpaid minimum wages (Count I) and unlawful tip sharing (Count II) in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, 206. *Id.* at 7–10. Shaquella Weston and Ashley Marquez joined this action as opt-in plaintiffs in November and December 2019, respectively. Doc. Nos. 37, 47.[1]

Defendants answered the Complaint and asserted several counterclaims against Plaintiff Ortiz and the putative class. Doc. No. 12. Ortiz filed a motion to dismiss the counterclaims, which the Court granted for want of jurisdiction. Doc. Nos. 19, 53.

The case proceeded in the normal course, with discovery commencing in December 2019. Doc. No. 48. On July 21, 2020, Plaintiff Ortiz moved to certify this matter as a collective action. Doc. No. 60 ("Motion to Certify"). Before the Court ruled on the Motion to Certify, the parties filed a joint notice of settlement on September 11, 2020. Doc. No. 71.

On October 2, 2020, Plaintiff Ortiz and opt-in plaintiffs Marquez and Weston (collectively, "Plaintiffs") filed what purported to be a joint motion to approve the parties' settlement agreement, which they attached to the motion. Doc. Nos. 74, 74-1. The undersigned denied that motion without prejudice because: (1) the motion was silent as to the how the parties resolved the Plaintiffs' claim for unlawful tip sharing; and (2) the settlement agreement was not signed by all of the parties. Doc. No. 75.

On October 21, 2020, the parties filed a renewed motion to approve their settlement agreement, this time including a fully executed copy of their agreement. Doc. Nos. 78, 78-2. The

---

[1] No other individuals have joined the action as opt-in plaintiffs.

undersigned also denied that motion without prejudice, however, because the parties had not addressed how the settlement amounts were allocated between unpaid wages and liquidated damages, nor had the parties adequately addressed the reasonableness of the attorney's fees that would be paid to Plaintiffs' counsel. Doc. No. 79.

The instant matter comes before the Court on the parties' third motion for settlement approval. Doc. No. 80. The parties have included with their motion a fully executed copy of their Settlement Agreement and Release ("Agreement"). Doc. No. 80-1. Under the Agreement, the Plaintiffs will receive a total of $13,500.00 to be divided as follows:

- Plaintiff Ortiz:   $1,741.48 ($870.74 in unpaid wages and $870.74 in liquidated damages);

- Plaintiff Marquez:   $1,741.48 ($870.74 in unpaid wages and $870.74 in liquidated damages);

- Plaintiff Weston:   $1,959.16 ($979.58 in unpaid wages and $979.58 in liquidated damages);

- Plaintiffs' attorney fees:   $4,004.44

- Plaintiffs' litigation costs:   $4,053.44

Doc. No. 80-1, at 3.

The parties ask that the Court approve their settlement in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), and to dismiss the case with prejudice. Doc. No. 80.

The renewed motion was referred to the undersigned, and the matter is ripe for review.

**II.     APPLICABLE LAW.**

In *Lynn's Food*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353. A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims. *Id.* at 1353–55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *Lynn's Food*, 679 F.2d at 1354. However, "[w]here the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required." *Park v. Am. Servs. of Cent. Fla., Inc.*, No. 6:06-cv-882-Orl-22JGG, 2007 WL 430651, at *2 (M.D. Fla. Feb. 3, 2007) (citing *MacKenzie v. Kindred Hosp. East, L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003)).

**III.     ANALYSIS.**

   *A.     Whether Plaintiffs Have Compromised Their FLSA Claims.*

In answers to the Court's Interrogatories, Plaintiff Weston claimed to be owed $93,568.00 inclusive of liquidated damages; Plaintiff Ortiz claimed to be owed $81,455.10 inclusive of liquidated damages; and Plaintiff Marquez claimed to be owed $21,642.00. Doc. Nos. 38, 43, 59. As discussed above, each Plaintiff will receive substantially less under the Agreement than she claimed to be owed in answers to the Court's Interrogatories. *See* Doc. No. 80-1, at 3.

Therefore, because Plaintiffs will receive less under the Agreement than the amount that they claimed was owed under the FLSA, Plaintiffs have compromised their FLSA claims within the meaning of *Lynn's Food*. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1226 (M.D. Fla. 2009) ("Broadly construed, a compromise would entail any settlement where the plaintiff receives less than his initial demand.").

   *B.     Reasonableness of the Settlement Amount.*

Because Plaintiffs have compromised their FLSA claims, the Court must, under *Lynn's Food*, evaluate whether the settlement amount that they agreed to accept is reasonable. The parties' settlement encompasses Plaintiffs' claims of misclassification, as well as their claims that Defendants allegedly imposed certain rules for entertainers, fines, and unlawful tip sharing. Doc. No. 80, at 9–10. In support of their joint motion, the parties explain that although Plaintiffs claimed they were misclassified as independent contractors rather than employees, Defendants disagree and dispute that Plaintiffs are owed any unpaid wages, further asserting that their records demonstrate that Plaintiffs either never performed at the subject club or only did so on a few occasions. Doc. No. 80, at 6–8. In reaching their settlement, the parties considered the disparity in their factual and legal positions; the risks, delays, and costs of continued litigation; Defendants'

financial position due to the subject club's permanent closure as a result of the COVID-19 pandemic; and that Defendant Loguidice may not be individually liable in this case. *Id.* at 10–11. The parties note that they engaged in full discovery, allowing them sufficient investigation and exchange of information to reach a fair and reasonable resolution of this matter. *Id.* at 11. And in considering Defendants' records, as well as Plaintiffs' lack of documentary evidence, the parties considered Plaintiffs' probability of success on the merits and agreed to settle the matter based on the risks involved. *Id.* at 12–13.[2] The parties, who each were represented by experienced counsel, agree that the settlement reached is a fair and reasonable resolution of Plaintiffs' claims. *Id.* at 15.

Because these representations adequately explain the reasons for the compromise of Plaintiffs' FLSA claims, I respectfully recommend that the Court find the amount of the compromise reasonable. *See Bonetti*, 715 F. Supp. 2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

    C.    *Attorney's Fees and Costs.*

Given that Plaintiffs have compromised their FLSA claims, the Court must also consider whether the payment to Plaintiffs' counsel is reasonable to ensure that the attorney's fees and costs to be paid did not improperly influence the amount that Plaintiffs agreed to accept in settlement. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).[3] Pursuant to the parties' Agreement, counsel for Plaintiffs will receive $4,004.44 in attorney's fees and $4,053.44 to cover litigation costs. Doc. No. 80-1, at 3. The parties' agreement states that "[t]he parties acknowledge and agree

---

[2] Plaintiffs estimate that the records demonstrate that Plaintiff Ortiz is owed $8,202.60 in unpaid wages; Plaintiff Weston is owed $8,200.08 in unpaid wages; and Plaintiff Marquez is owed $8,433.60 in unpaid wages. Doc. No. 80, at 12–13.

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

that the sums allocated to attorney's fees and litigation costs were negotiated separately and without regard to the amount paid to the Plaintiff[s] and that the fees and costs are reasonable." *Id.* In the joint motion, the parties further explain that although the amount of fees Plaintiffs' counsel will receive are less than the lodestar, in the interest of settlement, counsel agreed to accept a lesser sum. Doc. No. 80, at 14. The agreement regarding attorney's fees resulted from "an arm's length negotiation, separate and apart from the settlement of Plaintiff's underlying claims." *Id.*

Based on these representations, and in the absence of objection, I recommend that the Court find that the amount of attorney's fees and costs Plaintiffs' counsel will receive is reasonable and does not taint the amount that Plaintiffs have agreed to accept for resolution of their FLSA wage claims. *See Bonetti*, 715 F. Supp. 2d at 1228 (finding that when attorney's fee issue is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement").

### D. Other Terms of the Agreement.

Upon review, the Agreement does not contain a broad general release, confidentiality provision, non-disparagement clause, or other potentially problematic non-cash concession that would undermine the fairness of the parties' settlement. *See* Doc. No. 80-1. In particular, the release provides as follows:

> Plaintiff releases Defendants from any and all actions, causes of action, suits, debts, dues, sums of money, damages, judgments, executions, grievances, claims and demands whatsoever, in law or in equity, whether known or unknown, foreseen or unforeseen, that Plaintiff can or may have, as of the date of this executed agreement, that relate to any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Plaintiff does not waive rights or claims that may arise after the date this release is executed or any other claims or rights which, by law, cannot be waived.

*Id.* at 4–5.

Because the release is limited to the claims related to those raised in the complaint, *i.e.*, those related to "claims under the Fair Labor Standards Act," it raises no concerns under *Lynn's Food*. *See, e.g.*, *Monahan v. Rehoboth Hosp., Inc.*, No. 6:15-cv-1159-Orl-40KRS, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) (noting that "a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint"). I also note that the release of claims is mutual. *See* Doc. No. 80-1, at 5.

## IV. CONCLUSION.

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the Second Renewed Joint Motion for Judicial Approval of Settlement and Dismissal of Action with Prejudice (Doc. No. 80);

2. **FIND** that the Agreement (Doc. No. 80-1) is a fair and reasonable resolution of a bona fide dispute under the FLSA;

3. **DISMISS** this case with prejudice; and

4. **DIRECT** the Clerk of Court to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection**.

Recommended in Orlando, Florida on January 11, 2021.

*Leslie R. Hoffman*
LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record